IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIAYUN SHI,<br><br>Plaintiff,<br><br>vs.<br><br>LOREN K. MILLER, Director, Nebraska Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, in his official capacity, as well as his successors and assigns; KRISTI NOEM, DIRECTOR JOSEPH EDLOW, and PAMELA BONDI,<br><br>Defendants. | **8:25CV497**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Filing 48. For the reasons stated below, Defendants' motion is denied.

## I. INTRODUCTION

### A. Factual Background

Plaintiff Jiayun Shi is a Chinese national. Filing 40-2 at 136. According to Shi's December 21, 2023, declaration, Shi "studied at the Illinois Institute of Technology's main campus in Chicago, Illinois" from August 12, 2014, to November 24, 2016. Filing 40-2 at 7 (¶ 2). During this time, Shi was allegedly an F-1 student[1] and "completed [her] master's program in Marketing analytics and Communication." *See* Filing 40-2 at 7 (¶ 2). From July 5, 2016, to September 30,

---

[1] F-1 classification enables certain nonimmigrant students to enter the United States for purposes of participating in qualifying educational instruction. 8 U.S.C. § 1101(a)(15)(F)(i).

1

2017, Shi was allegedly "present in the U.S. in F1 status for [her] Optional Practical Training[2] [(OPT)]." Filing 40-2 at 7 (¶ 3). The forgoing dates represent the time period in which Shi was authorized to perform post-completion OPT according to an I-20 Certificate of Eligibility for Nonimmigrant Student Status issued by the Department of Homeland Security (DHS). *See* Filing 40-2 at 64. Shi declares that she worked for Exact Data[3] during the authorized post-completion OPT time period. Filing 40-2 at 7 (¶ 3); 15. On an unalleged date, Shi filed a STEM OPT extension application.[4] *See* Filing 40-2 at 8 (¶ 10), 68–69. However, when responding to an International Student Advisor at the Illinois Institute of Technology after receiving an "OPT Extension 6 Month Reporting Alert!" email, Shi stated that she "did not get a chance to use [STEM] OPT extension" after having the H-1B petition detailed below approved. Filing 40-2 at 16, 66–69.

As Shi's authorized post-completion OPT timeframe was winding down, Shi allegedly received a purported employment offer from Findream LLC. Filing 40-2 at 78–79. The offer letter is dated August 21, 2017, and Shi's acceptance of the offer is dated September 21, 2017. Filing

---

[2] "Practical training may be authorized to an F-1 student who has been lawfully enrolled on a full-time basis, in an approved SEVP–certified college, university, conservatory, or seminary for one full academic year." 8 C.F.R. § 214.2(f)(10). Two types of practical training are available: curricular practical training and optional practical training. *Id.* With respect to optional practical training, "a student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii)(A). "A student may be granted authorization to engage in temporary employment for optional practical training[] [a]fter completion of the course of study, or, for a student in a bachelor's, master's, or doctoral degree program, after completion of all course requirements for the degree (excluding thesis or equivalent)." 8 C.F.R. 214.2(f)(10)(ii)(A)(3). This type of Optional Practical Training is referred to as "post-completion OPT." "A student must complete all practical training within a 14–month period following the completion of study, except that a 24–month extension pursuant to paragraph (f)(10)(ii)(C) of this section does not need to be completed within such 14–month period." *Id.*

[3] Although the exact relationship between Exact Data and Consumerbase LLC is not alleged, the Amended Complaint and associated exhibits treat them interchangeably. *See generally* Filing 40; Filing 40-2. For instance, the "Response to Notice of Intent to Deny" states that "[Shi] was approved for H-1B status through Consumerbase, LLC (Exact Data)." Filing 40-2 at 15.

[4] Qualifying students can seek a 24-month extension (STEM OPT extension) of OPT "while in a valid period of post-completion OPT" after receiving a qualifying degree relating to science, technology, engineering or math. *See* 8 C.F.R. 214.2(f)(10)(ii)(C)(2).

40-2 at 78–79. Soon thereafter, on October 1, 2017, United States Citizenship and Immigration Services (USCIS) apparently issued an I-797A Notice of Action, which approved H-1B status for Shi. Filing 40-2 at 46. This form purportedly authorized Shi to work for Exact Data—not Findream LLC—from October 1, 2017, to July 31, 2020. *See* Filing 40-2 at 46. Shi declares that she was present in the United States "in H-1B status from October 1, 2017 to June 6 ,2024 [sic], working for Exact Data and American Spirit Corporation." Filing 40-2 at 7 (¶ 4). After "[Shi's] pending H-1B petition was approved on October 1, 2017," Shi allegedly "discontinued" her application for STEM OPT. Filing 40-2 at 15.

According to USCIS's November 10, 2021, Notice of Intent to Deny, "Weiyun 'Kelly' HUANG, a proprietor of Findream, LLC and Sinocontech, LLC . . . admitted to using her two companies, Findream, LLC and Sinocontech, LLC to provide fraudulent employment documents to at least 2,685 F-1 Students from September 6, 2015 to April 1, 2019." Filing 40-2 at 12. According to the Notice, "[HUANG] agreed with OPT customers … to provide false documents that purported to evidence employment at Findream or Sinocontech in order to permit the customers to fraudulently extend their F-1 visas via the OPT program." Filing 40-2 at 12 (alterations in original) (original emphasis omitted). According to the Notice, USCIS determined that Shi was "inadmissible to the United States under INA 212(a)(6)(C)(i)," as she was "confirmed to be an OPT customer" and "used [a letter obtained from Huang] solely to circumvent the immigration laws of the United States by fraudulently making a claim of employment to USCIS." *See* Filing 40-2 at 11–12. Shi was allegedly not notified when the fraud finding was made. Filing 40 at 7 (¶ 29). The original fraud finding against Shi appears to have been made by DHS sometime prior to January 26, 2020. *See* Filing 40 at 7 (¶ 30); Filing 40-2 at 8 (¶¶ 14–15).

3

According to the Amended Complaint, on January 26, 2020, prior to Shi becoming aware of the fraud finding made against her, "[Shi] tried to board an Air Canada flight from Toronto to Chicago, but was not permitted to board the plane." Filing 40 at 7 (¶ 30). "[Shi] was [allegedly] told that she had to check with the U.S. Embassy in Ottawa, Canada to find out why she was denied boarding." Filing 40 at 7 (¶ 30). Despite being allegedly told by the United States Embassy that "there was no problem with her H-1B visa," she was "denied entry and her H-1B visa was physically canceled" when she tried to enter the United States on January 29, 2020, through the Rainbow Bridge port of entry. Filing 40 at 7 (¶ 31). Shi was allegedly told that "her visa had been revoked because she worked for a 'bad company.'" Filing 40 at 7 (¶ 31).

Shi declared *inter alia* that when she was completing her OPT from July 5, 2016, through September 30, 2017,

> [Shi] worked for Exact Data but did not work for Findream, LLC. [Shi] had a job offer from Findream, LLC. When [Shi] accepted this job offer, [Shi] thought they were a legitimate company. [Shi] could not get ahold to anyone after trying to contact them about the training program and the orientation, so [Shi] did not join the company and rescinded [her] acceptance of their job offer. [Shi] was sponsored for an H-1B petition by Exact Data and continued working for that company in the U.S. in H-1B status.

Filing 40-2 at 7 (¶ 3).

Shi declares that she "hired a U.S. immigration attorney to help [her] try to reapply and have the INA 212(a)(6)(C)(i) finding removed from [her] records." Filing 40 at 7 (¶ 9). After being interviewed at the United States Embassy in Ottawa on January 12 and 13, 2021, where she allegedly "truthfully stated that [she] had never worked for Findream, LLC," "[Shi] eventually received another H-1B visa denial notice, stating that [she] [was] inadmissible under INA 212(a)(6)(C)(i)." Filing 40-2 at 8–9 (¶ 9).

In 2021, Shi's then-present employer, American Spirit Corporation, filed for an "H-1B extension." Filing 40-2 at 8 (¶ 10); *see* Filing 40 at 7 (¶ 28). However, USCIS issued the November 10, 2021, Notice of Intent to Deny cited above, which provided the fraud findings and "stated that [Shi] previously claimed employment with Findream, LLC during [Shi's] OPT period." Filing 40-2 at 8 (¶ 10). According to Shi, American Spirit Corporation responded to the Notice and "included evidence showing that [Shi] never worked for Findream, LLC and rescinded [her] acceptance of their job offer." Filing 40-2 at 8 (¶ 10). Shi also declared that "[she] discontinued [her] STEM OPT application shortly after that and [she] continued working in the U.S. under [her] then approved H-1B petition. ([She] did not need any STEM OPT, because [her] H-1B petition was selected in the annual USCIS H-1B lottery and approved for [her] employment in the U.S.)." Filing 40-2 at 8 (¶ 10). According to Shi, "[b]ased on [American Spirit Corporation's] response, USCIS approved [her] employer's H-1B extension." Filing 40-2 at 8 (¶ 11).

Shi declares that "[o]n April 5, 2022, [she] had [her] third H-1B visa interview at the U.S. Consulate in Toronto, based on [her] employer's H-1B extension approval." Filing 40-2 at 8 (¶ 12). According to the declaration,

> The U.S. Consular Officer (Michael Heise) told [Shi] that the visa system was still showing an INA 212(a)(6)(C)(i) finding against [her] and that meant that he could not issue a visa to [her] and he said there is nothing he can do about that including recommending a waiver. [Shi] was issued another denial form noting that [her] visa was refused under INA 212(a)(6)(C)(i) and told that [she] needed to contact U.S. Department of Homeland Security about the fraud finding.

Filing 40-2 at 8 (¶ 13). According to Shi's declaration, on April 27, 2022, American Spirit Corporation filed a request with the State Department's LegalNet Office in Washington, D.C. Filing 40-2 at 8 (¶ 14). According to the declaration, LegalNet responded on September 8, 2022, that the "visa application was denied because of a fraud finding" and that "[Shi and her employer] were directed to file an appeal of the fraud finding with DHS's Traveler Redress Information

5

Program." Filing 40-2 at 8 (¶ 14), 83. It is unclear whether Shi filed an appeal with the Traveler Redress Information Program. *See generally* Filing 40; Filing 40-2.

### B. Procedural Background

On December 22, 2023, Shi filed the initial Complaint in the United States District Court for the Northern District of Illinois against Loren K. Miller, Alejandro N. Mayorkas, Merrick Garland, and Ur Mendoza Jaddou. Filing 1. The case was transferred to the United States District Court for the District of Nebraska on August 7, 2025. Filing 28; Filing 29.

On August 22, 2025, Shi filed an Amended Complaint with exhibits. Filing 40; Filing 40-2. The Amended Complaint raises three causes of action. Shi's first claim alleges a "[v]iolation by DHS/USCIS/CBP/ICE of 5 U.S.C. [§]§ 555(e), 702, [and] 706(2)," as the Defendants' conduct was allegedly arbitrary and capricious and not supported by substantial evidence. Filing 40 at 8–10 (¶ 53). Shi's second claim alleges "a deprivation of liberty without meaningful review of the evidence available to Defendants, in violation of [Shi's] right to due process under the Fifth Amendment to the U.S. Constitution." Filing 40 at 11 (¶ 55). Shi's final cause of action alleges another Administrative Procedure Act claim and seeks *de novo* review under 5 U.S.C. 706(2)(f), as the Defendants' conduct was allegedly "unsupported by the facts in the administrative record." *See* Filing 40 at 11 (¶¶ 57–58).

Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and a brief in support of the motion on December 12, 2025. Filing 48; Filing 49. That same day, United States Magistrate Judge Ryan C. Carson issued an order substituting Kristi Noem for Alejandro Mayorkas, Joseph Edlow for Ur M. Jaddou, and Pamela Bondi for Merrick Garland pursuant to Federal Rule of Civil Procedure 25(d). Filing 50 at 2. On December 30, 2025, Shi filed a brief in

opposition to Defendants' Motion to Dismiss. Filing 52. On January 12, 2026, Defendants filed a reply brief in support of their motion. Filing 56.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(1) Standards

Federal Rule of Civil Procedure 12(b)(1) provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The plaintiff bears the burden of establishing subject matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023) (citing *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)). "When considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." *Smith v. UnitedHealth Grp. Inc*., 106 F.4th 809, 813 (8th Cir. 2024) (citing *Carlsen v. GameStop, Inc*., 833 F.3d 903, 908 (8th Cir. 2016)). "The method in which the district court resolves a Rule 12(b)(1) motion . . . obliges [the Circuit Court of Appeals] to follow the same approach." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Carlsen*, 833 F.3d at 908).

Defendants do not expressly commit to a facial or factual attack on jurisdiction. Nonetheless, the Court understands Defendants' attack to be facial because Defendants argue that, under the facts alleged in the pleading, the Court lacks subject matter jurisdiction. Filing 49 at 8 (saying that the plaintiff lacks jurisdiction because the challenged inadmissibility finding is unreviewable under the doctrine of consular nonreviewability). "If [a Rule 12(b)(1) motion] is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Smith*, 106 F.4th at 813. According to the Eighth Circuit Court of Appeals, district courts "afford[ ] [the Plaintiff's] complaint Rule 12(b)(6) protection by accepting as true all facts alleged in the complaint." *Carlsen*, 833 F.3d at 908

(internal quotation marks and citations omitted); *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (saying that when deciding a Rule 12(b)(6) motion, "[c]ourts may [also] consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." (internal quotation marks and citations omitted)). However, the "Rule 12(b)(6) safeguards" do not require a court to accept all of a plaintiff's allegations as true. Courts still "giv[e] no effect to conclusory allegations of law," and "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Thus, "[i]n a facial attack, 'a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction.'" *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

### B.  The Court Has Jurisdiction Over Plaintiffs' Claims

#### 1.  *The Parties' Arguments*

Defendants maintain that "the Court lacks jurisdiction because the challenged inadmissibility finding is unreviewable." Filing 49 at 8 (reduced from all capitals). More specifically, Defendants maintain that "the Judicial Branch has developed 'the doctrine of consular non-reviewability' as a justiciability principle barring review of nearly all claims touching on a consular officer's decision to deny a visa." *See* Filing 49 at 8. Defendants argue that the doctrine of consular nonreviewability applies in this case for two primary reasons. First, Defendants assert that, under Eighth Circuit caselaw, the inadmissibility finding against Shi is "an 'administrative decision excluding an alien' not subject to judicial review,'" as there has not been a clear statutory

grant of authority permitting review. Filing 49 at 10 (citing *Doan v. I.N.S.*, 160 F.3d 508, 509 (8th Cir. 1998)). Second, Defendants assert that the doctrine applies to DHS officials, not just consular officials located in the State Department, and the determination made by DHS is therefore not reviewable. *See* Filing 49 at 10.

Defendants state that a "narrow exception" to the doctrine of consular nonreviewability can apply when the constitutional rights of United States citizens are at stake, but Defendants argue that the "narrow exception" does not apply here because Shi is not a United States citizen. Filing 49 at 11. Therefore, Defendants conclude that Shi's claim asserting a violation of the Fifth Amendment should be dismissed for lacking jurisdiction with her other two claims based in the Administrative Procedure Act. *See* Filing 49 at 11–12.

Shi argues that the doctrine of consular nonreviewability is not so broad. Filing 52 at 3. Shi avers that *Doan* instead stands for the more limited proposition that the "functional equivalent of a consular official" at issue in that case, a legacy-INS district director stationed in Thailand, was deemed a functional equivalent by the Eighth Circuit "because he [was] an Executive branch official, located outside of the United States, deciding questions of admissibility brought before him by aliens who [were] also located outside of the United States." Filing 52 at 3 (original emphasis omitted). The doctrine does not apply in this case, according to Shi, because "defendants do not cite to any controlling legal authority that states that a finding made by a USCIS officer in Lincoln, Nebraska, under 8 U.S.C. § 1182(a)(6)(C)(i)" is the kind of "foreign policy decision protected by the doctrine of consular nonreviewability." Filing 52 at 3. Shi also cites to the United States Court of Appeals for the District of Columbia Circuit, saying that the plaintiffs in that case "sufficiently raised a forward-looking APA claim to the U.S. Department of State's Foreign

9

Affairs Manual as improper policy guidance" and that the Court deals with the "same question" here. Filing 52 at 5 (citing *Pietersen v. Dep't of State*, 138 F.4th 552 (D.C. Cir. 2025)).

In reply, Defendants chiefly assert that "the Eighth Circuit's mention of the physical location of the parties [in *Doan*] was sufficient but not necessary to establish consular nonreviewability" and that this is made clear by the "breath [sic] of its holding by declaring: 'Administrative decisions excluding aliens are not subject to judicial review unless there is a clear grant of authority by statute.'" Filing 56 at 3. According to Defendants, the inadmissibility finding in this case "was one of the '[a]dministrative decisions excluding aliens' precluded from review under *Doan*." Filing 56 at 2. However, Defendants also assert that Shi has not shown through nonconclusory facts that the "inadmissibility finding came from within the United States, nor does she specify who (other than someone within the Department of Homeland Security) made the determination." Filing 56 at 2–2. Defendants further argue that Shi inappropriately limits the doctrine to consular officials where it should, instead, encompass DHS officers and other federal agents. *See* Filing 56 at 4 (quoting *Dubey v. Dep't of Homeland Sec*, 154 F.4th 534, 537–38 (7th Cir. 2025)). Lastly, Defendants assert that Shi's citation to the District of Columbia Circuit "is clearly distinguishable as it involved a general challenge to the Department of State's guidance provided in its Foreign Affairs Manual, not an individual inadmissibility determination." Filing 56 at 3.

### 2. *The Doctrine of Consular Nonreviewability is Nonjurisdictional*

The Supreme Court of the United States identified the doctrine of consular nonreviewability as nonjurisdictional in *Trump v. Hawaii*, 585 U.S. 667, 683 (2018). The Supreme Court stated, "[W]e may assume without deciding that plaintiffs' statutory claims are reviewable, notwithstanding consular nonreviewability or any other statutory nonreviewability issue, and we

proceed on that basis." *Id.* The District of Columbia Circuit explained that the Supreme Court's statement means the doctrine of consular nonreviewability does not go to a federal court's jurisdiction, because, "[h]ad the doctrine been jurisdictional, the [Supreme] Court would have had to consider the doctrine to ensure its jurisdiction." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028 (D.C. Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks omitted))); *see also Teles de Menezes v. Rubio*, 156 F.4th 1, 9 (1st Cir. 2025); *Avullija v. Sec'y of State*, 839 F.Appx. 292, 295 (11th Cir. 2020) (collecting cases). As the Eleventh Circuit Court of Appeals has aptly explained, "Federal courts have found it appropriate to decline to review consular decisions out of 'respect for the separation of powers,' but this 'deference goes to our <u>willingness</u>, not our <u>power</u>, to hear these cases." *Avullija*, 839 F.Appx. at 295 (quoting *Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018)) (emphasis in original). The Ninth Circuit Court of Appeals has concluded that the doctrine of consular nonreviewability is "judicial in origin" and "informed by our respect for the separation of powers." *Allen*, 896 F.3d at 1101. "Article III confers subject matter jurisdiction to federal courts over 'all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States'" "subject to 'such Exceptions, and under such Regulations as the Congress shall make.'" *Baan Rao Thai Rest.*, 985 F.3d at 1028 (quoting U.S. Const. art. III, § 2). "'Without a 'statute [that] purports to strip [federal courts] of jurisdiction over consular decisions,' Article III continues to confer subject matter jurisdiction over these cases." *Avullija*, 839 F.Appx. at 295 (first alteration in original). Therefore, "[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao Thai Rest.*, 985 F.3d at 1028.

11

Defendants assert that all three claims must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the challenged inadmissibility finding is unreviewable pursuant to the doctrine of consular nonreviewability. Filing 48; Filing 49 at 8, 10–12 (saying that no exceptions apply to the doctrine of consular nonreviewability and that "the Court should dismiss this action for lacking jurisdiction"). However, the doctrine of consular nonreviewability does not go to the Court's power to hear the case but to the merits. *See Avullija*, 839 F.Appx. at 295; *Baan Rao Tai Rest.*, 985 F.3d at 1028. Defendants do not assert Federal Rule of Civil Procedure 12(b)(6) as a basis for dismissing the Amended Complaint. Filing 48; Filing 49. Therefore, the Court denies Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion to Dismiss, Filing 48, is denied.

Dated this 26th day of March, 2026.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

12